IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA AT HUNTINGTON

| | |
|---|---|
| ROBERT A. FLAUGHER, as Administer of the Estate of Shahnaz Rumman; <br><br> Plaintiff <br><br> v. <br><br> CABELL HUNTINGTON HOSPITAL, Inc., *et al.* <br><br> Defendants. | **Case No.:** 3:13-cv-28460 |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO LIMIT PLAINTIFF'S EXPERT WITNESSES

Now comes Plaintiff Robert A. Flaugher, Administrator for the Estate of Shahnaz Rumman, by his attorneys, C. Benjamin Salango and Preston & Salango, P.L.L.C., and Rodney M. Gaston and Miller & Zois, LLC, and hereby files Plaintiff's Opposition to Defendants' Joint Motion to Limit Plaintiff's Expert Witnesses, and in support thereof, states as follows:

### INTRODUCTION

The Defendants in this case have jointly moved to limit the number of expert witnesses the Plaintiff can call to testify at the trial of the above-captioned case. Because the Defendants' motion is devoid of legal authority and overlooks the Plaintiff's burden of proof in this medical malpractice case against nine named Defendants, the joint motion should be denied.

### PLAINTIFF'S BURDEN OF PROOF IN A WEST VIRGINIA MEDICAL MALPRACTICE CASE

A Federal Court sitting in diversity jurisdiction, as in this case, will apply West Virginia substantive law to the issues at bar. Because this case involves a claim of wrongful death arising out of the breaches of the standard of medical care by physicians, nurses, and other legal entities

in the state of West Virginia, the Plaintiff is required to follow West Virginia substantive law to prove his case.

In a West Virginia medical malpractice case, the Plaintiff must prove that each named medical provider breached the applicable standard of care, either individually or vicariously, by an employee or agent, and that each breach was a proximate cause of the injury to the Plaintiff. In this case, the breaches(s) resulted in the death of Dr. Rumman. West Virginia statute mandates that expert testimony is required to establish the breaches of the standard of case and the proximate cause of the injury to the patient. *See* W. Va. Code, § 55-7B-7. Without expert testimony, the Plaintiff's case will fail. The burden of proof is spelled out in *McDonald v. City Hospital, Inc.*, 227 W. Va. 707, 725 (2011) as follows:

> It is axiomatic that in a medical malpractice lawsuit such as the instant case, a plaintiff must establish that the defendant [health care provider] deviated from some standard of care, and that the deviation was 'a proximate cause' of the plaintiff's injury." *Mays v. Chang,* 213 W.Va. 220, 224, 579 S.E.2d 561, 565 (2003). In other words, "a plaintiff's burden of proof is to show that a defendant's breach of a particular duty of care was *a* proximate cause of the plaintiff's injury, not the *sole* proximate cause." *Id.* (emphasis in original). *See also* Syllabus Point 2, *Everly v. Columbia Gas of West Virginia, Inc.,* 171 W.Va. 534, 301 S.E.2d 165 (1982) ( "A party in a tort action is not required to prove that the negligence of one sought to be charged with an injury was the sole proximate cause of the injury."). Also, "[i]t is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses." Syl. Pt. 2, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (1964).' Syl. pt. 1, *Farley v. Meadows,* 185 W.Va. 48, 404 S.E.2d 537 (1991)." Syllabus Point 3, *Farley v. Shook,* 218 W.Va. 680, 629 S.E.2d 739 (2006). West Virginia Code § 55–7B–7(a) (2003) (Repl.Vol.2008) states: "The applicable standard of care and a defendant's failure to meet the standard of care, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required by the court.

*Id*.

It is against this legal backdrop that the Plaintiff submitted his expert witness disclosure. This case involves five fields of medicine: (1) Emergency Medicine; (2) Ob/Gyn Medicine; (3)

Internal Medicine; (4) Critical Care Medicine; (5) Infectious Disease Medicine; and (6) Nursing Care.  Because the wrongful death of Dr. Rumman also resulted in significant economic damages, the Plaintiff must produce an expert in the field of economics in order to present admissible testimony on this category of damages.  Plaintiff named two economists to satisfy this element of his claim.

All told, this case requires expert testimony in seven subject areas for which lay opinion testimony is inadequate.  In his disclosure, the Plaintiff named eight retained expert witnesses.  This is not the case wherein one negligent surgeon amputated the wrong leg.  This case involves breaches of the standard of care in many fields of medicine by numerous medical providers over a twelve hour period culminating in the death of Dr. Rumman.  Accordingly, the Plaintiff carefully selected medical experts in fields of medicine similar to each named defendant.  As outlined below the testimony of each expert is necessary in order for the Plaintiff to meet his burden of proof in this case.

## EMERGENCY MEDICINE

The Plaintiff claims that Dr. Rumman should have been evaluated and treated in the Emergency Department of Cabell Huntington Hospital.  Care provided in the Emergency Department was required under the applicable standard of care for the treatment of patients such as Dr. Rumman.  Cabell Huntington Hospital's own policy similarly required Dr. Rumman, who was less than twenty weeks pregnant, to be treated in the Emergency Department and not in the Ob/Gyn Labor and Delivery Unit.  *See* Exhibit 1, Cabell Huntington Hospital Policy.

When Dr. Rumman first arrived at Cabell Huntington Hospital, she was initially seen in the Emergency Department, placed in a wheelchair, and transported directly to the Ob/Gyn Triage Area by an Emergency Department Nurse.  *See* Exhibit 2, Deposition testimony of

Shawna Morris, Page 39, Line 24 – Page 40, Line 2 and Page 52, Lines 17-23. This breach resulted in an untimely delay in treating Dr. Rumman's sepsis, which sent her into septic shock from which she did not recover.

This claim requires expert testimony from a physician who is knowledgeable of the standards of medical care in emergency departments. Plaintiff named Dr. Kenneth Larsen as his Emergency Medicine expert. Dr. Larsen is Board Certified in Emergency Medicine and regularly practices emergency room medicine. He will provide testimony that, "On arrival at the Emergency Room Department of Cabell Huntington Hospital (sometime shortly before 5:35 PM), Dr. Rumman should have been formally triaged in the Emergency Department by the triage nurse and directed to the Emergency Room for her care according to Cabell Huntington Hospital's written policy and in accordance with the nationally accepted standard of care." *See* Exhibit 3. Dr. Larsen will also opine that had Dr. Rumman been properly managed in the Emergency Department, "…she would have recovered uneventfully, as the vast majority of appropriately treated patients with uncomplicated sepsis do." *See* Exhibit 3.

None of Plaintiff's other experts regularly practice Emergency Medicine. Without expert testimony from Dr. Larsen, it would be difficult, if not impossible, for the Plaintiff to meet his burden of proof that the Defendants breached the applicable standard of emergency room medical care, and that this breach was a proximate cause of the death of Dr. Rumman. The Defendants have not adequately explained in their motion why Dr. Larsen should be stricken as an expert witness in this case. There is no factual basis, much less a legal basis, to strike Dr. Kenneth Larsen as expert witness. To do so would result in great prejudice to the Plaintiff's ability to prosecute his claim.

## THE ECONOMIST

Plaintiff has identified two economists, Mr. Selby and Dr. Lurito, to provide expert testimony on the economic losses which resulted from Dr. Rumman's untimely death. Both economists prepared detailed economic loss reports which were provide to the Defendant. These reports were attached to the Plaintiff's expert disclosure. However, the Plaintiff does not intend to call two economists at trial. He will select one. The Defendants' only objection to the Plaintiff naming two economists is that the Defendants will have to incur the costs of taking two discovery depositions instead of one. Mr. Selby is located in West Virginia approximately 30 minutes from the Defendants' law offices. Dr. Lurito is located in Virginia. *See* Exhibit 4.

Under some circumstances, requiring a Defendant to travel to another state to depose an expert may place an undue burden on that party; however, that burden does not exist in this case, because the Defendants have informed the Plaintiff that they do not intend to depose Dr. Lurito. On October 30, 2014, Plaintiff provided, via email, the Defendants with a date to conduct the discovery deposition of Dr. Lurito, and Plaintiff was informed that the Defendants do not intend to depose Dr. Lurito. *See* Exhibit 5. If the Defendants change their minds, Dr. Lurito's discovery deposition can be taken *via* a telephone conference call and any travel expenses can easily be avoided. Because the Plaintiff will only be calling one of his two economists at trial to provide expert testimony on the issues of economic damages, there is no need to strike one of these experts at this stage in litigation.

## NURSING EXPERT

Plaintiff has named only one nurse to provide testimony in the field of nursing care – Sharon Gillespie, RN. *See* Exhibit 6. The Defendants want this Court to limit the number of

expert witnesses the Plaintiff can call to testify at trial on the topic of nursing medicine. The Plaintiff has named only one nurse who will provide testimony that the Defendant nurses breached the applicable standard of nursing care. In stark contrast, however, the Defendants have named two nurses, Richard Frady, RN, and Francilla Thomas, RN. These two nurses will render similar opinions that the Defendant nurses did not breach the applicable standard of care. Nurse Frady will opine that, "Nursing care in the ICU was consistent with the standards of care for sepsis patient…. I am of the opinion that the nursing care met the standard of care in accordance with the surviving sepsis campaign (2008 recommendation)…" *See* Exhibit 7. Nurse Thomas will opine, "…that the Ob Triage and LDR Nurses did what any prudent and reasonable nurse would do under the same or similar circumstances." *See* Exhibit 8.

Additionally, the Defendants named Richard Dellinger, M.D., who will opine that, "The assessment by the nurse following arrival at the hospital and notification of physician occurred in a timely fashion." *See* Exhibit 9. Defendants' expert, Brian Adkins, M.D., will also opine that, "I do not believe that the staff at Cabell Huntington Hospital deviated from the applicable standard of care in their designation of Shahnaz Rumman as most appropriate for emergency care at the obstetric triage area of the hospital." *See* Exhibit 10. The "staff" necessarily includes the defendant nurses who were employed by Cabell Huntington Hospital at the time they rendered nursing care to Dr. Rumman.

In this case, the Defendants complain that the Plaintiff has named more than one expert to provide testimony regarding the standard of nursing care, but the Defendants have named four experts to provide testimony in the field on nursing care. How can the Defendants, in all candor to the court, claim foul play by the number of experts named by the Plaintiff when they themselves have named four experts in the field of nursing care? To be sure, there may be

testimony from other physicians in this case that the nurses and nursing staff at Cabell Huntington Hospital breached the applicable standard of care. However, the decision to limit what may be viewed as cumulative evidence is more properly addressed by the trial judge in accordance with the testimony already received by the jury at the time the alleged "cumulative" testimony is offered. The trial judge is in a much better position to evaluate the proffered testimony and to render a decision regarding its admissibility.

The decision to elicit testimony from various witnesses during trial is a tactical decision made by the Plaintiff's lawyer based upon a myriad of ever changing events. The Plaintiff's attorney may choose not to elicit each and every opinion of each and every expert witness at trial. Trial is a fluid process, and the Plaintiff should be allowed to rely upon the expertise of his lawyer during the trial process. Excluding testimony of expert witnesses at this stage of the litigation is unjustified and would amount to a denial of legal representation.

## **OBSTETRIC CARE**

The Plaintiff has named two Ob/Gyn experts, Dr. Roberts and Dr. Beigi. Each expert has different qualifications. Specifically, Dr. Richard Beigi has additional experience and expertise in treating the Ob/Gyn patient, over and above Dr. Robert's qualifications. Dr. Beigi practices medicine in the field of Reproductive Infectious Diseases and Ob/Gyn medicine. He is currently the President of the Infectious Disease Society for Obstetrics and Gynecology. Dr. Beigi's expertise will be of particular importance in understanding how Dr. Rumman's sepsis, which was permitted to go untreated, caused her death. *See* Exhibit 11.

Both experts will offer opinions regarding the breaches of the standard of care by doctors Granger, Gutierrez, and Jude, and both will offer opinions on causation. Simply because the

testimony of these two experts may be similar does not justify the striking of one of these medical experts. In fact, there is no West Virginia case that supports the Defendants' positon that a party cannot name more than one expert in the same field of medicine in a medical malpractice case. The case cited by the Defendants, *State ex rel. Wierton Medical Center v. Mazzone*, 214 W.Va. 146 (2002), does not stand for the premise that the court must limit a party to only one expert in a particular field of medicine – it actually stands for the exact opposite.

In *State v. Mazzone*, the trial court limited the number of experts the Defendant intended to call in the field of Emergency Medicine to one expert. *Id*. The Defendant intended to offer expert medical opinions himself and also identified an expert in the same field of medicine. The trial court stated, "…that if Dr. Callahan, who was a treating physician, was going to give an opinion about whether his care and treatment of the decedent satisfied the applicable standard of care, then Dr. Callahan would not be permitted to present an independently-retained expert to also testify regarding the standard of care." *Id*. at 149.

Dr. Callahan objected to the trial Court limiting him to only one expert in the field of Emergency Medicine and appealed to the Supreme Court of Appeals of West Virginia. Justice Maynard opined that the trial court has the authority to limit what it believes to be cumulative testimony; however, the Supreme court held that the trial court "…abused its discretion in ruling that Dr. Callahan would not be permitted to present the testimony of his independently-retained expert in the field of emergency medicine, if he chose to testify himself that he complied with the applicable standard of care." *Id*. at 155. The Supreme Court of Appeals reversed the trial court's limitation of the number of expert witnesses a party could name in a particular field of medicine.

In this case, Defendant Jude, an obstetrician, identified Dr. Angela Bianco (a Board certified Ob/Gyn and maternal fetal medicine expert), as well as himself, as expert witnesses in

the field of Ob/Gyn medicine. Dr. Jude will opine, "…that he met the standard of care in his treatment of Shahnaz Rumman." *See* Exhibit 12. Dr. Bianco will opine that, "…the care and treatment rendered to Shahnaz Rumman by Dr. Granger, Dr. Gutierrez, Dr. Kinnard, and Dr. Jude met the applicable standards of care…." *See* Exhibit 13. The Defendants have named two expert witnesses in the field of Ob/Gyn medicine. Because the Defendants have filed a written agreement to share their respective expert witnesses, Defendants Cabell Huntington Hospital and Nurses Brown and Daugherty can utilize the testimony of two Ob/Gyn experts on the issues of the breaches of the standard of care and causation. *See* Pleading No. 120. Both the Plaintiff and the Defendants have named two experts in the field of Ob/Gyn medicine to render expert opinions in the case at bar. It would be a basic denial of due process to permit the Defendant to take advantage of expert testimony from two Ob/Gyn experts at trial and to strike one of the Plaintiff's Ob/Gyn experts.

Based upon the holding in *Mazzone*, naming two experts in the same field of medicine in a medical malpractice case is not excessive nor does it violate West Virginia law. The Defendants have failed to cite any Federal Rule of evidence in support of their motion to limit the number of expert witnesses, nor have they described with any particularity how the testimony of two experts in the field of Ob/Gyn medicine would result in any unfair prejudice. Once more, the decision to admit testimony of two medical experts with different qualifications is reserved for the trial judge's decision based upon the reasons for the proffered testimony at the time the expert testifies.

## CRITICAL CARE MEDICINE

The Plaintiff has claimed that Defendant Dr. Kinnard, M.D., breached the applicable standard of care at the time he admitted Dr. Rumman to the Surgical Intensive Care Unit on

September 29, 2012.  Dr. Kinnard, although an Internal Medicine physician, stepped into the shoes of a Critical Care physician when he took over the care of Dr. Rumman on September 29, 2012, and admitted her to the Surgical Intensive Care unit at Cabell Huntington Hospital.

Plaintiff has named Dr. James Leo, M.D., as his only expert in the field of critical care medicine.  Dr. Leo is Board Certified in the field of Critical Care Medicine and will opine that Dr. Kinnard breached the applicable standard of critical care medicine at the time he admitted Dr. Rumman to the Surgical Intensive Care Unit and that this breach was a proximate cause of Dr. Rumman's death.  In particular, Dr. Leo will opine that, "When Dr. Kinnard assumed the care of this patient in the ICU, he chose not to obtain expert consultation with an infectious disease specialist or a pulmonary critical care specialist at that point in time.  Both of these specialties have expertise in the management of severe sepsis, and it is pulmonary/critical care physicians who are most commonly called upon for initial management.  In failing to obtain such consultation, Dr. Kinnard took upon himself the mantle of the standard of care for management of severe sepsis…. It is my opinion that upon assuming the care of this patient in the ICU, Dr. Kinnard had an independent duty to determine which antibiotics had been administered already by consulting the MAR in order to insure that the key tenant of severe sepsis management was in fact appropriately managed….It is my opinion that the failure by Dr. Kinnard to identify the delay in administration of gentamicin and to order it on a stat basis at the time he evaluated Dr. Rumman constituted a breach of the standard of care."  *See* Exhibit 14.

Dr. Kinnard's negligence stands separate and apart from the negligent acts committed by the other defendant health care providers, and the Plaintiff is required to produce expert testimony from an expert witness who "…is engaged or qualified in a medical field in which the practitioner has experience and or training in diagnosing or treating injuries or condition similar

to those of the patient." W.Va. Code, Section 55-7B-7 (a)(5). Dr. Leo is this expert. The Defendants attempt to exclude Dr. Leo as the Plaintiff's only Critical Care expert, because his testimony is somehow cumulative, is without legal basis.

## INFECTIOUS DISEASE

Plaintiff has named one Infectious Disease expert, Dr. Debra Spicehandler, M.D. *See* Exhibit 15. The Defendants have named one Infectious Disease expert – Dr. Parenti. *See* Exhibit 16. This case involves a patient who died from the untimely treatment of an infectious disease. The Defendants have not objected to the Plaintiff's identification of an infectious disease expert in their motion. Therefore, there is no reason why the testimony of the Plaintiff's only Board Certified Infectious Disease expert should be stricken.

## CONCLUSION

In conclusion, the burden placed on a Plaintiff prosecuting a medical malpractice case based upon West Virginia substantive law mandates expert testimony in each field of medicine involved in the case. To meet this burden, the Plaintiff has named experts in the same or similar field of medicine for each named defendant and an expert in the field of infectious diseases as well as two economists. Because the Plaintiff will be calling only one of his two economists at trial, and because the Defendants have failed to show good cause why any of the Plaintiff's expert witnesses should be stricken, the Defendants' Motion should be denied.

**WHEREFORE**: For the reasons stated above, the Plaintiff respectfully requests that the Defendants' Motion be denied.

    Robert A. Flaugher as Administrator of the
    Estate of Shahnaz Rumman

    By Counsel

*/s/ C. Benjamin Salango*
C. Benjamin Salango (WVSB # 7790)
Preston & Salango, P.L.L.C.
Post Office Box 3084
Charleston, West Virginia 25331
Telephone: (304) 342-0512
Fax: (304) 342-0153

Rodney M. Gaston
Miller and Zois, LLC
7310 Ritchie Highway, Suite 1001
Glen Burnie, MD 21061
(410) 553-6000

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA AT HUNTINGTON

| | |
|---|---|
| ROBERT A. FLAUGHER, as Administer of the Estate of Shahnaz Rumman; <br><br> Plaintiff <br><br> v. <br><br> CABELL HUNTINGTON HOSPITAL, Inc., *et al.* <br><br> Defendants. | **Case No.:** 3:13-cv-28460 |

## CERTIFICATE OF SERVICE

I, C. Benjamin Salango, counsel for the Plaintiff, do hereby certify that on this 17th day of November, 2014, I electronically filed the foregoing "**Plaintiff's Opposition to Defendant's Joint Motion to Limit Plaintiff's Expert Witnesses**" with the Clerk of the court using the CM/ECF system, and mailed a copy of same with this Certificate of Service via First Class mail postage prepaid from Glen Burnie, Maryland to the following:

D.C. Offutt, Jr., Esq.
Offutt Nord Burchett, PLLC
949 Third Avenue, Suite 300
Huntington, WV 25701

Rebecca Brown, Esq.
Bailes, Craig & Yon, PLLC
401 10th Street, Suite 500
P.O. Box 1926
Huntington, WV 25720-1926

>*/s/ C. Benjamin Salango*
> C. Benjamin Salango (WVSB # 7790)
> Preston & Salango, P.L.L.C.
> Post Office Box 3084
> Charleston, West Virginia 25331
> Telephone: (304) 342-0512
> Fax: (304) 342-0153