IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

ROBERT A. FLAUGHER, as Administrator
of the Estates of Shahnaz Rumman,

Plaintiff,

v.                                                           CIVIL ACTION NO.   3:13-28460

CABELL HUNTINGTON HOSPITAL, INC., et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Marshall University Board of Governors, University Physicians & Surgeons,

Inc., the Physician Defendants and the Cabell Huntington Hospital Defendants' Joint Motion to

Limit Plaintiff's Expert Witnesses, ECF No. 121.   For the reasons explained below, the Motion is

**DENIED**.

I.      **Background**

On November 8, 2013, Plaintiff Robert A. Flaugher—administrator for the estate of Dr.

Shahnaz Rumman—filed the initiating Complaint, alleging medical malpractice and wrongful

death arising out of the medical treatment rendered to Dr. Rumman for her septic miscarriage from

September 28, 2011, to October 2, 2011, at Cabell Huntington Hospital by four physicians and two

nurses: Physician Defendants Jessica Granger, M.D., Christine Gutierrez, M.D., David Judge,

M.D., and Randy Kinnard, M.D.; and Nursing Defendants Brenda Brown and Alexis Daugherty.

On May 29, 2014, with leave of the Court, Plaintiff filed an Amended Complaint, ECF No. 42,

incorporating new factual and legal allegations and adding a request for punitive damages.

Plaintiff alleges that Defendants deviated from the applicable medical standard of care in failing to timely diagnose and treat Shahhaz Rumman's septic miscarriage caused by an e-coli infection. According to Plaintiff, Defendants' delayed evaluations of Shahhaz Rumman's condition and delayed administration of antibiotics caused physical injury to Shahhaz Rumman, including sepsis, cardiac arrest, and ultimately death.

On September 26, 2014, Plaintiff timely disclosed the following eight expert witnesses:

(1) Kenneth Larsen, M.D., an expert in emergency medicine, located in Marshall, VA;

(2) James Leo, M.D., an expert in emergency medicine, critical care, and internal medicine, located in Long Beach, CA;

(3) William Roberts, M.D., an expert in OB/Gyn medicine, located in Signal Mountain, TN;

(4) Richard Beigi, M.D., an expert in OB/Gyn medicine and infectious disease, located in Pittsburgh, PA;

(5) Debra Spiceshandler, M.D., an expert in infectious disease and internal medicine, located in Chappaqua, NY;

(6) Richard Lurito, Ph.D., and expert in economics, located in McLean, VA;

(7) Dan Selby, an expert in economics, located in Hurricane, WV; and

(8) Sharon Leigh Gillepie, R.N., an expert in nursing, located in Charleston, WV.

On November 7, 2014, Defendants filed the instant Joint Motion to Limit Plaintiff's Expert Witnesses. Plaintiff timely filed a response, and Defendants timely filed a reply. This Motion is ripe for resolution. After explaining the applicable law, the Court will consider whether it is necessary or appropriate to limit Plaintiff's expert witnesses at this time.

## II.  Applicable Law

The Federal Rules of Evidence govern the admissibility of evidence in federal court. Rule 403 of the Federal Rules of Evidence provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence.

Under West Virginia's Medical Professional Liability Act ("MPLA"), in order to prevail in a medical malpractice action, a plaintiff is required to offer proof that "an injury or death resulted from the failure of a health care provider to follow the accepted standard of care." W.Va. Code § 55-7B-3(a). As dictated by statute, there are two essential elements of proof required:

> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
>
> (2) Such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3(a). The MPLA further requires that a plaintiff establish a defendant's failure to meet the standard of care through the testimony of "one or more knowledgeable, competent expert witnesses if required by the court." W.Va. Code § 55-7B-7(a).[1] Thus, "[i]t is the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses." *McDonald v. City Hospital, Inc.*, 227 W.Va. 707, 735 (W.Va. 2011) (quoting *Farley v. Shook*, 218 W.Va. 680 (W.Va. 2006)).

With that general backdrop in mind, Defendant cites *State, ex rel. Weirton Medical Center v. Mazzone*, 587 S.E.2d 122 (W.Va. 2002), for the proposition that it is "within the trial court's discretion to limit the number of expert witnesses in a case," including limiting a party to presenting only one expert witness per subject matter. ECF No. 121 at 4–5. While the Supreme Court of Appeals of West Virginia did explain in *Mazzone* that a trial court *may* limit the number of experts presented, the lower court's decision was reversed by the precisely because expert

---

[1] The Court recognizes the possibility of exceptions to the requirement of expert testimony in a medical malpractice action, for instance, "where lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." *Farley v. Shook*, 218 W.Va. 680, 685 (W. Va. 2006).

witnesses had been improperly limited. 587 S.E.2d at 130–31.   The abuse of discretion was not merely in limiting a party to one expert witness in a particular field of medicine—as represented by Plaintiff—but more narrowly that doing so is improper when a defendant herself is then the only expert allowed to testify on her behalf regarding the applicable standard of care. *Id.* at 131.   In short, *Mazzone* explains very little on the question of limiting non-defendant expert witnesses.

## III.   Analysis

### A.  Medical and Nursing Experts

Defendants argue that Plaintiff has disclosed expert witnesses with overlapping areas of expertise who can be expected to offer duplicative testimony, thereby wasting time, engendering confusion, and creating unfair prejudice that outweighs any possible probative value.   Defendants summarize Plaintiff's list of expert witnesses as including two experts in each of four fields of medicine: OB/Gyn, Infectious Disease, Emergency Medicine, and Internal Medicine; as well as two economic experts and one nursing expert.   In addition to anticipated overlapping testimony on the standard of medical care, Defendant further expects Plaintiff's medical experts to offer duplicative opinions on the standard of nursing care.[2]

In contrast, and overlapping expertise of the listed experts notwithstanding, Plaintiff notes that this case stretches across five distinct fields of medicine: (1) Emergency Medicine; (2) OB/Gyn Medicine; (3) Internal Medicine; (4) Critical Care Medicine; and (5) Infectious Disease Medicine.   Plaintiff maintains that each named expert is necessary to speak to the existing standard of care, and even where there are experts with multiple areas of expertise, each has discrete qualifications and experience.

---

[2] Much like Plaintiff's medical experts who can allegedly be expected to offer opinions regarding nursing care, Plaintiff reciprocally alleges that Defendants' experts Richard Dellinger, M.D., and Brian Adkins, M.D., can similarly be expected to offer such opinions.

Under the logic animating the decision in *Mazzone*, individual Defendants in this case may offer expert testimony as to the standard of care *and* provide a second expert witness, at minimum, to also offer expert testimony as to the standard of care governing that Defendant.   Given the number of Defendants and the range of specialized practice areas, the Court rather readily foresees a formidable collection of experts being offered by both parties.   At this early juncture, the Court is strained to summarily conclude that Plaintiff's relatively modest list of expert witnesses would introduce prejudicially unfair testimony considering the breadth and depth of expert testimony that will conceivably be presented by Defendants.   Accordingly, Plaintiff may presently proceed with the five named medical experts; however, the Court will expect testimony offered at trial to be limited to that which is reasonably necessary to meet Plaintiff's burden of proof and not unnecessarily cumulative or duplicative.

Similarly, the Court is not inclined to limit Plaintiff's nursing expert at this early juncture. Plaintiff has named one expert in nursing care.[3]   It is not clear that a physician will be deemed qualified offer credible testimony on the standard of care applicable to nurses; it should instead be expected that only testimony by a nurse will reliably establish the applicable standard of care. Accordingly, the Court will not deny Plaintiff the opportunity to present a nursing expert.

**B. Economic Experts**

Plaintiff has disclosed two economic experts to provide testimony on damages.   However, Plaintiff intends to only call one of these two witnesses.   Thus, Defendants' complaint against naming two economic experts goes to the cost and inconvenience of taking the deposition of one

---

[3]  Plaintiff's single nursing expert would appear to be in contrast to the two nursing experts that Plaintiff represents Defendants intend to call in order to establish the applicable standard of nursing care.   Assuming such representation is accurate, and under the same logic motivating this decision, so long as Defendants nursing experts have distinguishable credentials and expertise, and are able to offer testimony that is neither cumulative nor duplicative, it is likely that the Court would allow Defendants to rely on both nursing experts at trial.

expert in Virginia and a second expert in West Virginia.  While the Court is not insensitive to Defendants' motivation to streamline preparation for trial and narrow the field of possible evidence, a need to take two depositions seems a modest inconvenience, at best.  The Court is therefore inclined to afford the Plaintiff the benefit of preceding with both economic experts.

**IV.     Conclusion**

For the reasons explained above, Defendants' Joint Motion to Limit Plaintiff's Expert Witnesses, ECF No. 121, is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        December 9, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE