IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA AT HUNTINGTON

| | |
|---|---|
| ROBERT A. FLAUGHER, as Administer of the Estate of Shahnaz Rumman;<br><br>  Plaintiff<br><br>  v.<br><br>CABELL HUNTINGTON HOSPITAL, Inc., *et al.*<br><br>  Defendants. | **Case No.:** 3:13-cv-28460 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AGAINST ALL DEFENDANTS
ON THE ISSUE OF LIMITED LIABILITY**

Now comes Plaintiff Robert A. Flaugher, Administrator for the Estate of Shahnaz

Rumman, by his attorneys, C. Benjamin Salango and Preston & Salango, P.L.L.C., and Rodney

M. Gaston and Miller & Zois, LLC, and hereby files Plaintiff's Motion for Partial Summary

Judgment against all Defendants on the Issue of Limited Liability, and in support thereof, states

as follows:

**INTRODUCTION**

This is a medical malpractice case involving the death of a 37 year old physician, Dr.

Shahnaz Rumman (hereinafter "Dr. Rumman"). On September 28, 2011, at 5:35 p.m., Dr.

Rumman presented to Cabell Huntington Hospital (hereinafter "Cabell") complaining of fever,

nausea, and vomiting. Upon her arrival, Dr. Rumman was immediately sent to the Labor and

Delivery unit for triage (hereinafter referred to as "OB Triage"). [1] Dr. Rumman was not properly

assessed and categorized in OB Triage. Although she was eventually admitted to the hospital,

---

[1] This was pursuant to a Cabell Hospital unwritten policy that required patients of certain doctors that are affiliated
with Marshall University and Valley Health to be referred to OB Triage as opposed to the emergency room. Since
Dr. Rumman was a patient of Dr. Price, she was sent to OB Triage.

there was a substantial delay in her treatment and diagnosis. In particular, there was a substantial delay in diagnosing Dr. Rumman with sepsis and treating the infection with the antibiotic Gentamicin. As a direct and proximate result of this negligence, Dr. Rumman suffered substantial pain and suffering, and eventually died on October 2, 2011.

Plaintiff now moves for Partial Summary Judgment on the issue of whether the Defendants are entitled to limited liability under West Virginia Code § 55-7B-9c when they clearly violated the statute by failing to follow the written protocols for triaging patients as promulgated by the West Virginia Office of Emergency Medical Services. Plaintiff also moves for summary judgment because Dr. Rumman was not receiving health care services necessitated by an "emergency condition" as that term is defined by West Virginia Code § 55-7B-2(d). Because Dr. Rumman's medical care was not necessitated by an "emergency condition," the limited liability afforded to the Defendants under West Virginia Code § 55-7B-9c does not apply.

For these reasons, Plaintiff's Motion for Partial Summary Judgment against all Defendants on the Issue of Limited Liability should be granted.

## **UNDISPUTED FACTS**

On September 28, 2011 at 5:35 p.m. Dr. Rumman presented to Cabell Huntington Hospital and was seen in OB Triage. *See OB Triage Form attached as Exhibit 1.* Upon arriving in OB Triage, Dr. Rumman was complaining of a fever, nausea, and vomiting. *See OB Triage Form attached as Exhibit 1.* The nurses in OB Triage used a form to assess Dr. Rumman; however, the form did not contain a triage level or category based upon Dr. Rumman's medical condition. *See OB Triage Form attached as Exhibit 1.*

Shawna Morris (hereinafter "Nurse Morris") is a registered nurse at Cabell. She has worked at Cabell since 2009. A large part of her time as a nurse has been spent working in OB Triage. *See Morris Deposition, lines 16 – 24, attached as Exhibit 2.* According to Nurse Morris, OB Triage is only performed by the OB Triage nurse. *See Morris Deposition, lines 20 – 22, attached as Exhibit 3.* Nurse Morris also testified that when an OB triage nurse performs her assessment at Cabell she uses the form marked as *Exhibit 1* as well as a drop-down menu on the computer. However, neither the form nor the drop-down menus on the computer have a line to assign a patient a triage level or category based upon their medical condition. *See Morris Deposition, lines 2 - 10, attached as Exhibit 4.* According to Nurse Morris, Cabell does not triage patients in accordance with the emergency severity index or any nationally-recognized severity indexes. *See Morris Deposition, lines 2 - 12, attached as Exhibit 5.* Nurse Morris testified that there are no policies or procedures at Cabell OB Triage for assigning patients a triage level or category based upon their medical condition. *See Morris Deposition P. 27, lines 22 – 24, P. 28, lines 1 - 8, attached as Exhibit 6.* Nurse Morris testified that on September 28, 2011 she was the first nurse to assess Dr. Rumman, but she failed to complete her triage assessment because her shift was ending. *See Morris Deposition P. 62, lines 9 - 24, P. 63, lines 11-24, P. 65, lines 5-9, attached as Exhibit 7.*

Whitney Pinkerton (hereinafter "Nurse Pinkerton") is the registered nurse who took over for Nurse Morris after her shift ended on September 28, 2011. She performed the remainder of the triage evaluation of Dr. Rumman. *See Pinkerton Deposition P. 65, lines 23-24, P. 66, line 1, attached as Exhibit 8.* At her deposition, Nurse Pinkerton testified that she only uses the form attached as *Exhibit 1* to triage patients; however, the form does not contain any triage levels. She also testified that she is not familiar with the state required triage assessment levels. *See*

*Pinkerton Deposition P. 66, lines 7-22, attached as Exhibit 8.* <u>More importantly, Nurse Pinkerton</u> <u>testified that she did not assign Dr. Rumman any particular triage level or category on September</u> <u>28, 2011.</u> *See Pinkerton Deposition P. 67, lines 13-16, attached as Exhibit 9.* <u>It is the triage</u> <u>classification level assigned at the time the patient presents at a trauma center that determines</u> <u>whether limited liability under the Code applies. It was not done in this case.</u>

At her deposition, Nurse Pinkerton admitted that she was unable to determine if Dr. Rumman was suffering from an acute medical condition which, according to the standardized criteria for triage, involves a significant risk of death or involves the precipitation of significant complications, disabilities, or impairment of bodily functions. *See Pinkerton Deposition P. 68, lines 1-22, P. 69, lines 1-5, attached as Exhibit 10.*

Dr. David Jude was Dr. Rumman's attending physician. According to Dr. Jude, he did not perform a triage assessment of Dr. Rumman on September 28, 2011. *See Jude Deposition P. 26, lines 4-7, attached as Exhibit 11.* He testified that he does not perform triage assessments of patients. *See Jude Deposition P. 28, lines 11-19, attached as Exhibit 12.* More importantly, Dr. Jude testified that when he evaluated Dr. Rumman he did not believe she was at any significant risk of death or of developing severe disabilities, including severe physical impairments. *See Jude Deposition P. 29, lines 3-14, attached as Exhibit 13.* He merely thought she was suffering from a viral infection that didn't require antibiotics. *See Jude Deposition P. 57, lines 3-17, attached as Exhibit 14.*

In its Response to Plaintiff's Requests for Admissions, Defendant Cabell admits that Dr. Ruman was not triaged in the emergency room, but in the OB Triage unit. *See Cabell's Response to Plaintiff's Request for Admission Number 7 attached as Exhibit 15.* Defendant Cabell also admits that Dr. Rumman's hand-written medical chart does not contain any triage classification

level, nor does Dr. Rumman's electronic medical chart contain any triage classification level. This is because Dr. Rumman was never assigned a triage classification level. *See Cabell's Response to Plaintiff's Request for Admission Numbers 12 and 13 attached as Exhibit 15.*

In its Response to Plaintiff's Requests for Admissions, Defendants University Physicians & Surgeons, Inc., Marshall University Board of Governors, Jessica K. Granger, Christine K. Gutierrez, David C. Jude, and Randy Kinnard admit that Dr. Ruman was not triaged in the emergency room, but in the OB Triage unit. *See Defendants University Physicians & Surgeons, Inc., Marshall University Board of Governors, Jessica K. Granger, Christine K. Gutierrez, David C. Jude, and Randy Kinnard's Response to Plaintiff's Request for Admission Number 7 attached as Exhibit 16.* Defendants University Physicians & Surgeons, Inc., Marshall University Board of Governors, Jessica K. Granger, Christine K. Gutierrez, David C. Jude, and Randy Kinnard also admit that Dr. Rumman's hand-written medical chart does not contain any triage classification level, nor does Dr. Rumman's electronic medical chart contain any triage classification level. *See Defendants University Physicians & Surgeons, Inc., Marshall University Board of Governors, Jessica K. Granger, Christine K. Gutierrez, David C. Jude, and Randy Kinnard's Response to Plaintiff's Request for Admission Number 12 and 13 attached as Exhibit 16.*

## LEGAL STANDARD

A moving party is entitled to summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a).* Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Fed. R. Civ. P. 56(c).* "The summary judgment procedure prescribed in

Rule 56 is designed for the prompt disposition of an action when there is no genuine issue

regarding any material facts, thus avoiding an unnecessary trial to prove facts which are not in

dispute." *Curtis Publishing Co. v. Church, Rickards & Co.,* 58 F.R.D. 594, 596 17 Fed. R. Serv.

2d (Callaghan) 749. "By its very terms, this standard provides that the mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 91 L.

Ed. 202, 211 (U.S. 1986). "[T]here is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party." *Id. at 250*. "If the

evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82 (1967) (*per curiam*), or is

not significantly probative, *Cities Service, supra,* at 290, summary judgment may be granted."

*Anderson at 250*. In order to survive a motion for summary judgment, the nonmoving party must

offer more than a mere "scintilla of evidence" in support of his or her position. *Anderson at 252*.

## ARGUMENT

**A. Limited liability under West Virginia Code § 55-7B-9c does not apply in this case because the Defendants are in clear violation of the established written protocols for triage developed by the Office of Emergency Medical Services.**

There is no genuine dispute in this case that Cabell is a designated trauma center for

purposes of the statute. *See List of West Virginia Trauma Centers attached as Exhibit 17*. West

Virginia Code § 55-7B-9c provides limited liability of $500,000.00 for healthcare providers

providing health care services for "emergency conditions" for which a patient is admitted to

designated trauma centers. The relevant portion of the statute reads as follows:

> In any action brought under this article for injury to or death of patient as a
> result of health care services or assistance rendered in good faith and
> necessitated by an emergency condition for which the patient enters a
> health care facility designated by the office of emergency medical services
> as a trauma center…the total amount of civil damages recoverable shall

not exceed five hundred thousand dollars, exclusive of interest computed from the date of judgment.

*W. V. Code § 55-7B-9c(a).*

West Virginia Code § 55-7B-9c(g) further states that "the Office of Emergency Medical Services shall, prior to the effective date of this section, develop a written protocol specifying recognized and accepted standards for triage and emergency health care procedures for treatment of emergency conditions necessitating admission of the patient to a designated trauma center."

On January 15, 2004, the Office of Emergency Medical Services promulgated written standardized criteria for triage in a document entitled "State Trauma and Emergency Care System Emergency Health Care Procedures and Triage Procedures for Designated Trauma Centers." (hereinafter referred to as the "Emergency Triage Procedures"). *See Emergency Triage Procedures attached as Exhibit 18.* According to these Procedures, all West Virginia designated trauma centers *shall use* the following four levels of triage in classifying patients:

**Category I – Resuscitation**

Conditions which are an immediate threat to life and/or involve a significant risk of death to the patient. Patient must be triaged immediately to a treatment area with initiation of basic resuscitation measures.

**Category II – Emergent**

Conditions which involve a significant risk of death or present a significant risk of precipitation of significant complications to the patient. Patient must be triaged rapidly to a treatment area with initiation of basic monitoring and treatment procedures.

**Category III – Urgent**

Conditions which involve a significant risk of significant complications or disabilities, or impairment of bodily functions. Patient must be triaged, but does not require rapid intervention, however, must be reassessed at least every hour to determine any change in triage level.

**Category IV – Non-Urgent**

Conditions which do not involve a significant risk of death or the precipitation of significant complications or disabilities, impairment of bodily functions, or, with respect to a pregnant woman, a significant risk to the health of the unborn child. Patient must be triaged, but does not require rapid intervention. Must be reassessed at least every two (2) hours to determine any change in triage level.

*Emergency Triage Procedures attached as Exhibit 18.*

Even though West Virginia Code § 55-7B-9c provides limited liability, this provision *does not apply* if the health care provider is in clear violation of written triage protocols under the statute. The relevant provision reads as follows:

The limitation on liability provided under subsection (a) of this section does not apply where health care or assistance is rendered:

… (2) *In clear violation of established written protocols for triage and emergency health care procedures developed by the Office of Emergency Medical Services in accordance with subsection (g) of this section.* In the event that the Office of Emergency Medical Services has not developed a written triage or emergency medical protocol by the effective date of this section, the limitation on liability provided under subsection (a) of this section does not apply where health care or assistance is rendered under this section in violation of a nationally recognized standards for triage and emergency health care procedures.

*W. V. Code § 55-7B-9c(f) (emphasis added).*

When the above cited statutes are applied to the facts of this case, it is clear that the Defendants cannot claim limited liability under the West Virginia Code § 55-7B-9c. This is because they have clearly violated the established written Emergency Triage Procedures developed by the Office of Emergency Medical Services by failing to

properly triage Dr. Rumman and by failing to assign Dr. Rumman a triage classification level.

Once Dr. Rumman arrived at Cabell, she was immediately transferred to OB triage where she was seen by Nurse Morris. According to Nurse Morris, she didn't actually triage Dr. Rumman. *See Morris Deposition P. 62, lines 9 - 24, P. 63, lines 11-12, P. 65, lines 5-9, attached as Exhibit 7.* She performed a partial assessment and then left because her shift was ending. At her deposition, Nurse Morris testified that she has worked in OB triage since 2009 and she is unfamiliar with any triage levels or classification schemes similar to the ones developed by the Office of Emergency Medical Services. In fact, she testified that Cabell does not utilize any triage levels or classification schemes in OB triage. *See Morris Deposition P. 27, lines 22 – 24, P. 28, lines 1 - 8, attached as Exhibit 6.* According to Nurse Morris, Cabell uses a form and a drop down menu on a computer to triage the patient, but neither of those items contain any reference to a triage level or classification scheme. *See Morris Deposition, lines 2 - 10, attached as Exhibit 4.*

Nurse Pinkerton took over for Nurse Morris once her shift was over. She triaged Dr. Rumman on September 28, 2011. *See Pinkerton Deposition P. 65, lines 23-24, P. 66, line 1, attached as Exhibit 8.* At her deposition, she testified that she uses the same forms and computer drop down menus as Nurse Morris. Just like Nurse Morris, she testified that these forms and menus do not contain any reference to a patient's triage level or classification based upon their medical condition. In fact, Nurse Pinkerton testified that in general she is unfamiliar with any triage levels or classification schemes. *See Pinkerton Deposition P. 66, lines 7-22, attached as Exhibit 8.* Most importantly, Nurse Pinkerton

testified that she failed to assign Dr. Rumman  any particular triage level or classification

on September 28, 2011. *See Pinkerton Deposition P. 67, lines 13-16, attached as Exhibit*

*9.*

Similarly, Dr. Jude, who was Dr. Rumman's attending physician, testified that he

did not triage Dr. Rumman or assign her a triage level on September 28, 2011. *See Jude*

*Deposition P. 29, lines 3-14, attached as Exhibit 13*.

As is abundantly clear from the above testimony, the Defendants are in clear

violation of West Virginia Code § 55-7B-9c, by failing to assign Dr. Rumman a triage

classification level and thus, cannot avail themselves of the limited liability afforded

under the Code. The classification scheme as laid out by the Emergency Triage

Procedures was designed to help healthcare providers identify patients at high risk of

suffering death or significant medical complications. The purpose of the Emergency

Triage Procedures is to aid in classifying these patients as a way of prioritizing their care

and providing them the best treatment available. Unfortunately, Defendant Cabell has

opted not to utilize or adopt any of these statutorily required triage procedures or

protocols in the treatment of its Ob/Gyn patients. Worse yet, most, if not all of Cabell's

Ob/Gyn physicians and nurses seem unfamiliar with any of these state required triage

levels and do not readily apply them in their practice. As a result, Ob/Gyn patients at

Cabell are triaged without the benefit of any triage levels or classification schemes.

Unfortunately, this has proven to be a dangerous practice in the field of medicine, which

is the precise reason why the Emergency Triage Procedures were created.

Here, the Defendants are in clear violation of the statute because they simply

failed to triage Dr. Rumman in accordance with the written Emergency Triage

Procedures. Therefore, they cannot receive the benefit of limited liability under West

Virginia Code § 55-7B-9c.

For these reasons, Plaintiff's Motion for Partial Summary Judgment against all

Defendants on the Issue of Limited Liability should be granted.

**B. The limited liability of West Virginia Code § 55-7B-9c does not apply because Dr. Rumman does not fall within the "emergency condition" requirement of the statute.**

The limited liability of West Virginia Code § 55-7B-9c(a) only applies if there is

an "injury to or death of a patient as a result of health care services or assistance rendered

in good faith and necessitated by an *emergency condition* for which the patient enters" a

designated trauma center. (*emphasis added*). *W. V. Code § 55-7B-9c(a).* West Virginia

Code § 55-7B-2(d) defines an "emergency condition" as "any acute traumatic injury or

medical condition which, according to standardized criteria for triage, involves

significant risk of death or the precipitation of significant complications or disabilities,

impairment of bodily functions, or, with respect to a pregnant woman, a significant risk

to the health of the unborn child." *W. V. Code § 55-7B-2(d).*

In the Emergency Triage Procedures discussed above, only the first three

categories (Resuscitation, Emergent, and Urgent) involve situations that fall with the

definition "emergency condition" under the statute. The fourth category (Non-Urgent)

specifically does not fall within that definition.

The Emergency Triage Procedures goes on to give examples of conditions that

fall within each category. Of relevance to this case, the Emergency Triage Procedures

provides that, with respect to Category IV – Non-Urgent, "Examples of "usual"

presentations may include but is not limited to: Vomiting/diarrhea – no pain, no

dehydration – normal mental status." *Emergency Triage Procedures attach as Exhibit 18.*

In this case, the September 28, 2011 OB Triage form filled out for Dr. Rumman indicated she presented with nausea, vomiting, and a fever. *See OB Triage Form attached as Exhibit 1*. She did not have any abdominal pain. There were no other complicating factors. According to Dr. Jude, her attending physician, this means her condition was non-urgent:

> DR. JUDE: … You know, when someone presents with – there are a lot of reasons why women will – who are pregnant will present with fever and tachycardia. Her chief complaint when she arrived was fever and nausea. And so – you know. And so, fever with nausea would almost certainly be a viral type infection rather than a bacterial infection. Viral infections would not require antibiotics. Most people with ruptured membranes and intrauterine infections will complain of abdominal pain and she really didn't have abdominal pain. She told us, after we examined her, that she may have been leaking fluid the previous day, but initially there wasn't any – any history of leaking fluid that would indicate a higher risk for intrauterine infection.

*See Jude Deposition P. 57, lines 3-17, attached as Exhibit 14.*

According to Dr. Jude, Dr. Rumman was not suffering from an "emergency condition" when she presented to OB Triage on September 28, 2011. At his deposition, he testified that he did not believe she was at significant risk of death or any significant risk of developing severe disabilities or severe physical impairments. *See Jude Deposition P. 29, lines 3-14, attached as Exhibit 13*.

Defendants may try to argue that Dr. Rumman was in fact a "Category III – Urgent" patient under the Emergency Triage Procedure scheme; however, Dr. Rumman was never classified as an "Urgent" patient and she certainly was never treated like one. Under the stated required Emergency Triage Procedure scheme, an "Urgent" patient is one with "abdominal pain." *Emergency Triage Procedures attached as Exhibit 18*. Dr. Rumman did not have "abdominal pain" when she was in OB Triage. She only had

nausea, vomiting, and a fever. As Dr. Jude said, this does not constitute an "emergency condition." When she first presented, he merely thought she had a viral infection that did not warrant antibiotic treatment. *See Jude Deposition P. 57, lines 3-17, attached as Exhibit 14.*

Because  Dr. Rumman was not suffering from an "emergency condition" when she presented to Cabell, and because the facts giving rise to this cause of action do not arise out of health care received for an "emergency condition," the limited liability of West Virginia Code § 55-7B-9c(a) does not apply.

<div align="center">

**CONCLUSION**

</div>

Wherefore, for all the reasons stated above, Plaintiff's Motion for Partial Summary Judgment against all Defendants on the Issue of Limited Liability should be granted and the Defendants should not be afforded limited liability under West Virginia Code § 55-7B-9c(a).

<div style="margin-left: 50%;">

Robert A. Flaugher as Administrator of the Estate of Shahnaz Rumman

By Counsel

</div>

*/s/ C. Benjamin Salango*
C. Benjamin Salango (WVSB #7790)
Preston & Salango, P.L.L.C.
Post Office Box 3084
Charleston, West Virginia 25331
Telephone: (304) 342-0512
Fax: (304) 342-0153

Rodney M. Gaston
Miller and Zois, LLC
7310 Ritchie Highway, Suite 1001
Glen Burnie, MD 21061
(410) 553-6000

<div align="center">

13

</div>

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA AT HUNTINGTON

| | |
|---|---|
| ROBERT A. FLAUGHER, as Administer of the Estate of Shahnaz Rumman;<br><br>    Plaintiff<br><br>    v.<br><br><br>CABELL HUNTINGTON HOSPITAL, Inc., *et al.*<br><br>    Defendants. | **Case No.:** 3:13-cv-28460 |

## <u>CERTIFICATE OF SERVICE</u>

I, C. Benjamin Salango, counsel for the Plaintiff, do hereby certify that on this 4th day of March, 2015, I electronically filed the foregoing **"Plaintiff's Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment Against All Defendants on the Issue of Limited Liability"** with the Clerk of the court using the CM/ECF system, and mailed a copy of same with this Certificate of Service via First Class mail postage prepaid from Baltimore, Maryland to the following:

D.C. Offutt, Jr., Esq.
Offutt Nord Burchett, PLLC
949 Third Avenue, Suite 300
Huntington, WV 25701

Rebecca Brown, Esq.
Bailes, Craig & Yon, PLLC
401 10th Street, Suite 500
P.O. Box 1926
Huntington, WV 25720-1926

*/s/ C. Benjamin Salango*
C. Benjamin Salango (WVSB #7790)

14